# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) ) ) ) ) | |
| v. | ) ) | Criminal Action No. 04-128 (RMC) |
| **LARRY GOOCH,** | ) ) ) | |
| **Defendant.** | ) ) | |

## MEMORANDUM OPINION

By verdict returned June 1, 2007, Larry Gooch was found guilty of a narcotics conspiracy, participation in a Racketeer Influenced Criminal Organization ("RICO"), drug dealing, four felony murders, assault with intent to kill while armed, assault on a police officer, three violent crimes in aid of racketeering activity ("VICAR"), and various gun charges. His counsel filed a Motion to Vacate the Judgment of Guilt on August 10, 2007[1] [Dkt. # 844] ("Def.'s Mot."), which was opposed by the Government on September 6, 2007 [Dkt. # 850]. With sentencing set for September 14, 2007, the Court issued an Order on September 11, 2007 [Dkt. # 852], denying the motion. This Memorandum Opinion explains the Court's rationale for that Order.

---

[1] The Government contends that Mr. Gooch filed his Motion to Vacate after the jurisdictional 7-day limit imposed by Federal Rule of Criminal Procedure 33(b)(2) and that the extension of time did not comply with Federal Rule of Criminal Procedure 45(b)(1)(A). Govt.'s Opp. at 1 n.1. If there were any error, it was the Court's in not setting a definite deadline until July 17, 2007. *See* Minute Entry Order filed July 17, 2007 (noting that on June 6, 2007, the Court granted Defendant's oral motion for an extension of time to file a motion for new trial and setting a briefing schedule). The Court can only plead fatigue after five months of trial.

## I. Severance of the Cunningham-Lane Murders

Mr. Gooch was convicted of the murders of William Cunningham and Christopher Lane on or about August 1, 2000, in connection the burglary of Mr. Cunningham's apartment. *See* Verdict Form [Dkt. # 812] ("Verdict") at ¶ III, Counts 112 & 113. He argues, as he did in a pre-trial motion to sever, that the evidence related to these murders had no connection to the larger narcotics and RICO conspiracies. Before trial, the Government "'proffer[ed], albeit vaguely, that trial testimony [would] demonstrate that Messrs. Gooch, Dorsey, and J. Robinson 'banded together as early as 1997 to commit crimes to further the goals of the drug trafficking enterprise,' suggesting that the Cunningham/Lane home invasion and murders are illustrative of that joint activity.'" Order Denying Motion to Sever [Dkt. # 692] at 31. At trial, however, the Government's main witness, Herbert Jones, testified that he heard that Mr. Cunningham and others planned to rob him, that it made him mad, and that he planned to rob Mr. Cunningham instead (with the help of Messrs. Gooch, Dorsey, and Robinson) "'[b]ecause I got my feelings.'" Trial Transcript ("Tr.") of 4/12/07 (a.m.) at 88. In other words, Mr. Jones wanted to protect his own reputation by robbing Mr. Cunningham before Mr. Cunningham could rob him. *See* Tr. of 4/12/07 (p.m.) at 31.

Mr. Gooch argues that "no evidence connected the Cunningham-Lane crimes and the other alleged crimes" other than the commonality of participants. Def.'s Mot. at 4. It was, at best, "a tenuous connection suggested prior to trial whose flimsiness became stark when put to the test at trial." *Id*. at 5 (quoting *United States v. Nicely*, 922 F.2d 850, 854 (D.C. Cir. 1991)). Mr. Gooch was not convicted on Counts 118 and 119, which charged him with VICAR, 18 U.S.C. § 1959, in relation to the murders of Messrs. Cunningham and Lane. He argues that his acquittal means that the only connection between the murders and the M Street Crew (and its narcotics/RICO

conspiracies) has evaporated.  Inasmuch as "[t]he [G]overnment's case for [Mr.] Gooch's guilt of the VICAR murder of [Messrs.] Cooper and Miller, and the state law murder of [Messrs.] Cunningham and Lane, was not strong," Mr. Gooch argues that he was terribly prejudiced.

> The [G]overnment's case for [Mr.] Gooch's murder of [Messrs.] Cunningham and Lane depended on a single, substantially discredited cooperator who had given multiple versions of events, combined with meager support from two other witnesses.  The [G]overnment did not have a single independent eyewitness or shred of forensic evidence for the Cunningham-Lane crimes.  The [G]overnment's case for [Mr.] Gooch's murder of [Mr.] Cooper and [Ms.] Miller was even weaker, resting on the evidence of two impeached cooperators and one of two fingerprints present on the murder weapon.  The [G]overnment's case for the VICAR murder of [Mr.] Cooper and [Ms.] Miller was so weak as to be almost non-existent.  By combining unrelated offenses, the [G]overnment was able to bolster its weak evidence of each individual charge by the strength of the evidence as a whole.

Def.'s Mot. at 7.

Wishing does not make a thing so.  Counsel's argument is the best that might be made from a strong record of guilt.  The guilty verdicts against Mr. Gooch for the murders of Messrs. Cunningham and Lane rested, quite properly, on the essentially uncontested testimony of Mr. Jones that he enrolled Mr. Gooch and his friends to rob Mr. Cunningham, *see* Tr. of 4/12/07 (a.m.) at 87-88, and that Mr. Gooch shot Mr. Cunningham in the face at the doorway to his apartment, killing him. *See id*. at 99.  Mr. Jones also testified that when Mr. Lane tried to hide in the kitchen area of the apartment "Pinball"[2] shot Lane in the back of the head.  See Tr. of 4/12/07 (p.m.) at 9-10 & 27. Mr. Gooch's cross examination of Mr. Jones focused on attempting to disconnect the M Street Crew,

---

[2] The Superseding Indictment identifies "Pinball" as Tommie Dorsey.  Superseding Indictment [Dkt. # 386] at 3.

and its narcotics and RICO conspiracies, from the Cunningham/Lane murders to avoid the VICAR counts. *See id*. at 32-69; Tr. of 4/16/07 (a.m.) at 3-119; Tr. of 4/16/07 (p.m.) at 19-61.  It did not shake Mr. Jones's basic testimony about the commission of the crimes.  Indeed, evidence from the mother of two of Mr. Gooch's children (Bonita Jones), and her sister (Lakisha Jones), as to Mr. Gooch's activities on the night of the murders also supported the jury verdict.  *See, e.g.*, Tr. of 4/11/07 (a.m.) at 96-134; Tr. of 4/11/07 (p.m.) at 3-102.  Similarly, the evidence as to Mr. Gooch's guilt on the Miller/Cooper murders was solid.

Acquittal of the VICAR counts related to the Cunningham/Lane murders does not mean that there was no logical nexus between those murders and the racketeering enterprise: it just means that the jury did not find that the Government proved its case on those counts beyond a reasonable doubt.  The narcotics conspiracy was alleged to have started as early as 1997 and, indeed, the Government produced evidence on which Mr. Gooch was convicted of the narcotics conspiracy "from on or about at least 1997 and continuing until November 2004." Verdict Form ¶ I [Dkt. # 812]. Similarly, the jury found sufficient evidence to convict Mr. Gooch of a "pattern of racketeering activity from at least 1997 and continuing until November 2004." *Id.* ¶ II.  Further, the jury entered a special finding that the felony murders committed by Mr. Gooch, *see id*. ¶ III, were "related to the activities of the racketeering enterprise." *Id.* ¶ II.  The evidence persuaded the jury, beyond a reasonable doubt, that Mr. Gooch was guilty of both the narcotics and RICO conspiracies from sometime in 1997 to 2004, a period that clearly encompassed the August 2000 burglary that resulted in the murders of Messrs. Cunningham and Lane.  The Motion to Vacate the Judgment as to the murders of William Cunningham and Christopher Lane will be denied.

## II. Testimony on the Sentencing Guidelines After *Booker*

During the trial, witnesses cooperating with the Government testified that they hoped to receive a motion for a downward departure under U.S. Sentencing Guidelines § 5K1.1. "To expose the bias inherent in such an expectation, [Mr.] Gooch sought to cross-examine cooperating witnesses on the structure of the guidelines, the sentences under the Guidelines, and the benefits of a 5K motion." Def.'s Mot. at 8. The Court limited such questioning. For instance, Herbert Martin signed his plea agreement in March 2004, and in January 2005 the Supreme Court determined that the Guidelines could not be both constitutional and mandatory. *United States v. Booker*, 543 U.S. 220 (2005). The remedy was to make the Guidelines advisory. *Id.* at 245-46 ("So modified, the [Sentencing Reform Act] makes the Guidelines effectively advisory. It requires a sentencing court to consider Guidelines ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well.") When Mr. Gooch attempted to have Mr. Martin explain that legal history, the Court told counsel at the bench, "I don't think that you can have this witness who spent all of that time in jail necessarily answer the legal question what are the guidelines, were they mandatory then and are they mandatory now." Tr. of 2/13/07 (a.m.) at 91. The Government expressed "a standing objection to asking this witness to try to give his legal opinion as of [sic] the impact of all of the Supreme Court case law," to which James Connell, counsel for Mr. Gooch, responded, "I won't do that." *Id.* Later, however, defense counsel asked Mr. Martin:

> Q. And you understand that there have been some changes in the law which change the way that the sentencing guidelines are applied, correct?
>
> A. What do you mean by that? I don't understand the question.
>
> Mr. Dominguez: We object thereafter.

> The Court: Right. I just –
>
> Mr. Connell: That's all right. We'll do that part through another witness.
>
> The Court: I don't think that this witness can answer those legal questions.

*Id*. at 93. When Mr. Connell questioned Mr. Martin further on offense levels under the Guidelines, and offered to show him "the relevant sentence pages of the sentencing guidelines," the Court intervened, saying, "I'm sorry, I'm not going to have you question this witness on legal matters." *Id*. at 94.

Later in trial, during his defense case, Mr. Gooch called Steven McCool as an expert witness to explain the Sentencing Guidelines to the jury. Mr. McCool is a practicing criminal defense lawyer. During his testimony, Mr. McCool indicated that a sentence within the Guidelines range is "where a federal District Court judge would sentence that individual absent some additional findings or motions." Tr. of 4/26/07 (p.m.) at 6-7. The Court intervened to say, in front of the jury, "That wasn't an accurate answer . . . . He's not accurately answering your question." *Id.* Mr. Connell responded, "Okay, Okay. I will clarify and then we will go back to the offense level." *Id.* At the bench, Mr. Connell explained that he wanted to use Mr. McCool's testimony to argue bias in the testimony of cooperating witnesses. The following exchange then occurred.

> COURT: I think the bias is sort of evident, but I don't think you need a full explanation of the guidelines. So just keep it as simple as you can. And the reason that I interrupted before and said that it wasn't right is because Mr. McCool . . . was talking as if the guidelines continued to be any limitation and they really aren't.
>
> MR. CONNELL: Well, they are some limitation.

> COURT: No.
>
> [AUSA] MR. DOMINGUEZ: No.
>
> COURT: They are not. You just have to say this is what the guideline sentence would be, and then you can move on and do whatever you want.
>
> MR. CONNELL: Okay, I understand. And I thought you were talking about *Booker*, and so we got there.

*Id.* at 14.

At the close of the direct examination, the Court questioned Mr. McCool:

> COURT: And since the guidelines are no longer mandatory, do they constrain a judge in sentencing? Do they limit what a judge can do in sentencing?
>
> WITNESS: In my view, they do, yes.
>
> COURT: In what fashion?
>
> WITNESS: Well, the – there's – you know, the law is in flux I believe in this area, and as I said, that the – the – the law says that the sentencing judge must consult the guidelines. But if the sentence imposed is too far away from the guideline range, then that could be appealed to the United States Court of Appeals. Now, here it would be the United States Court of Appeals for the District of Columbia [C]ircuit, and they would determine whether or not that that was a reasonable sentence.
>
> Now, in my view, it seems as though the Court of Appeals are saying –
>
> COURT: Okay. Wait, wait. I don't really need the legal analysis. Forgive me, I asked the question, it's my fault. And I'm not quite sure how to handle this because I can't testify. But with all respect, and I have great respect for Mr. McCool as a criminal trial lawyer, on this point we have a slight disagreement.

*Id*. at 20-21.  Mr. Connell then asked to approach, "because I can't even figure out what the disagreement is." *Id.* at 21.  At the bench, the Court explained, "The disagreement is that he thinks that the guidelines are some constraint on the final sentence. . . . I don't think I have any obligation to sentence within the guidelines as long as I explain my rationale." *Id.* at 21-22.  To Mr. Connell's argument that "what the witnesses has said is essentially accurate, especially given the reality that upwards of 90 percent of all sentences in the United States post *Booker* . . . are guidelines [sentences]," *id*. at 24, the Court stated (still at the bench),

> COURT: The issue is the word "constraint." That's what bothers me. And so I don't on that point agree that the guidelines are a constraint. They are – they're not empty. They're not an empty suit, but they're not a constraint, and that has to be clear to the jury, because I can't have you quoting or putting later an argument that it is a constraint, because I would have to interrupt you and correct it in front of the jury. I don't want to do that. I can correct the witness, but I don't want to correct you.
>
> MR. CONNELL: Right. The mandatory minimums are clearly a constraint.
>
> THE COURT: Absolutely.
>
> MR. CONNELL: Okay. If the sentencing guidelines – I guess we could debate about the meaning of the word "constraint." Let's see if we can find a better word.
>
> THE COURT: Well, we just need to get something that Mr. McCool will testify to.
>
> MR. CONNELL: I will fix it by – I will ask him, "Post *Booker*, are the guidelines advisory or mandatory?" How about that?
>
> THE COURT: Okay. Thank you.

*Id.* at 24-26.  Thereafter, Mr. Connell asked the witness if the Guidelines were advisory or mandatory

and if mandatory minimum sentences are advisory or mandatory. *Id.* at 26. Mr. McCool replied that the Guidelines are advisory and that mandatory minimum sentences are mandatory, and his direct testimony ended. *Id.*

In his Motion to Vacate Judgment, Mr. Gooch argues that these limitations and comments by the Court prejudiced his ability to present a bias defense to counter the testimony of the Government's cooperating witnesses. He also contends that the Court's interpretation of *Booker* is incorrect. As to the former, the Court finds that the potential bias of these witnesses was so clear, and defense counsel's cross-examination on that subject was so extensive, that Mr. McCool's testimony about the Sentencing Guidelines could not cloud it. As to the latter, Mr. Gooch can raise the argument with the U.S. Court of Appeals for the D.C. Circuit.

The Court limited questioning of a lay witness on the complexity of the Guidelines pre- and post-*Booker*. As the quoted testimony from Mr. Martin makes clear, he was incompetent to answer such questions; he was not an expert witness and his opinion on the effect of *Booker* on his future sentence was not relevant. The Court's ruling did not curtail bias cross-examination as the signed plea agreement included a proffer accepted by the witness of the projected Guidelines calculations and sentencing range. In any event, Mr. Connell waived his right to raise these points by acquiescing in the Court's rulings without preserving the objection. *See* Tr. of 2/13/07 (a.m.) at 93 ("That's all right. We'll do that part through another witness.").

Mr. Connell also failed to object to the Court's questions to Mr. McCool. A contemporaneous objection must be made to preserve an issue for review. *See United States v. Greatwalker*, 356 F.3d 908, 913 (8th Cir. 2004) (finding that the failure to object to the trial court's questioning of a witness resulted in forfeiture of the issue on appeal). Most of the Court's comments

concerning Mr. McCool's testimony were made at the bench but the Court once indicated that Mr. McCool was not answering a question properly and once expressed a limited disagreement with his testimony. Mr. Gooch asserts that "a judge's apparent disbelief of a witness is potentially fatal to the witness's credibility." *United States v. Godwin*, 272 F.3d 659, 678 (4th Cir. 2001); *see also*, *Quercia v. United States*, 289 U.S. 466, 470 (1933) (court may analyze and dissect evidence, but may not distort it or add to it); *Blunt v. United States*, 244 F.2d 355, 365 (D.C. Cir. 1957) (same).

The cases cited by Mr. Gooch concern a trial court's commentary on the facts of the case and thus address a potential trespass into the sole purview of the jury. In this case, the Court commented on an expert witness's opinion as to how *this Court* would sentence these particular cooperating witnesses. The testimony raised an issue of law, well within the domain of the Court. And, as the Court explained to defense counsel, it wanted to be sure that counsel did not rely on the testimony to make an argument to the jury and prompt the Court to interrupt during defense counsel's summation.[3] The Court finds no basis to order a new trial.

### III.  Intrinsic Evidence of Other Crimes

Finally, Mr. Gooch complains that the Court allowed the Government to introduce evidence of uncharged shootings, fights, and other wrongdoing under the rubric of "intrinsic evidence" and that this evidence prejudiced Mr. Gooch by inflaming the jury against him, without the benefit of any limiting instruction. Claiming that the D.C. Circuit has substantially narrowed the admissibility of such evidence, Mr. Gooch contends that the Court erred in allowing such evidence

---

[3] *Booker* has altered the landscape and may make it more difficult for defense counsel to explain clearly to a jury just how a cooperating witness can seek a lesser sentence. Even so, the fact that a cooperating witness may seek a lesser sentence is self-evident, with or without the Guidelines.

into the record.  *See* Def.'s Mot. at 18.

In *United States v. Badru*, 97 F.3d 1471, 1474-45 (D.C. Cir. 1996), *United States v. Washington*, 12 F.3d 1128, 1135 (D.C. Cir. 1994), and *United States v. Allen*, 960 F.2d 1055, 1058 (D.C. Cir. 1992), the D.C. Circuit ruled that uncharged acts which are "inextricably intertwined" with the charged offenses are intrinsic to the charged offenses and exempt from an analysis under Federal Rule of Evidence 404(b).  *See Badru*, 97 F.3d at 1474 (Rule 404(b) may exclude evidence that is "extrinsic" to the crime charged).  However, in *United States v. Bowie*, 232 F.3d 923, 928 (D.C. Cir. 2000), a panel rejected the term "inextricably intertwined" as unhelpful and circular.  The *Bowie* decision held that "if the evidence is of an act that is part of the charged offense, it is properly considered intrinsic.  In addition, some uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime."  *Id.* at 929.  Mr. Gooch insists that *Bowie* represents a new and more narrow test in this Circuit for intrinsic evidence.

The Court disagrees.  First, as is obvious, a single panel cannot reverse circuit precedent; only an en banc panel or the Supreme Court can.  Second, Mr. Gooch's conclusion that *Bowie* represents a narrowing of the *Badru*, *Washington*, and *Allen* line of cases is in error. While its terminology may differ, *Bowie* continues to recognize that uncharged bad acts may be "intrinsic" and thereby admissible without a Rule 404(b) analysis if the acts were "part of the charged offense" or if they were "contemporaneous" and "they facilitated the commission of the charged crime."  *Bowie*, 232 F.3d 929.  Here, Mr. Gooch was charged as a participant in both narcotics and RICO conspiracies that spanned the years from 1997 to 2004.  The evidence of which he complains was presented to demonstrate the on-going nature of those conspiracies and the various participants

throughout those years. In all of those years, Mr. Gooch was alleged and shown to have been actively involved. For instance, the uncharged assault on a police officer of which he complains, *see* Def.'s Mot. at 19, occurred at the Washington Convention Center as Mr. Gooch's friends and co-conspirators freed Gooch from an arresting officer. *See* Tr. of 3/12/07 (p.m.) at 5-25. The attempted arrest was prompted by an outstanding warrant on the Cunningham/Lane murders. The group's act in freeing Mr. Gooch demonstrated his position in the M Street Crew and was intrinsic to the charged conspiracies. *Id*.

The Court appreciates the argument that Mr. Gooch suffered prejudice from entry of such evidence into the record; that is the nature of all evidence that tends to demonstrate guilt.

### IV.  Conclusion

The Motion to Vacate the Judgment of Guilt [Dkt. # 844] is without merit and was denied for the reasons given in this Opinion and the Court's Order filed September 11, 2007.

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

DATE: September 28, 2007