UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | )
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| v. | ) Criminal No. 04-128-23 (RMC) |
| | ) |
| **LARRY GOOCH,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## OPINION

Larry Gooch has filed a *pro se* Motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his criminal convictions and sentence. The United States opposes the motion. The Court has reviewed the motion carefully and concludes that it must be denied. Mr. Gooch's claims are without merit.

## I. FACTS

Larry Gooch was a defendant in the multi-defendant prosecution of a drug dealing enterprise—the M Street Crew—in Washington, D.C. An investigation of the M Street Crew by the Safe Streets Task Force, a joint effort by the D.C. Metropolitan Police Department (MPD) and the Federal Bureau of Investigation (FBI), began in 2002 and ended on March 16, 2004, when thirty-nine individuals were arrested in the District of Columbia, Maryland, Virginia, New York, and California. In a 159-Count Superseding Indictment filed on October 19, 2005, a Grand Jury charged Mr. Gooch and his co-defendants with, among other crimes, narcotics conspiracy, in violation of 21 U.S.C. § 846; racketeering conspiracy, in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68; narcotics trafficking; murder and other violent crimes; and various weapons crimes. *See* Superseding Indictment [Dkt. 386].

1

The Superseding Indictment charged Mr. Gooch with four murders in connection with the M Street Crew conspiracy. *See id.* at 51–58, 60–61. On October 19, 2005, the Government filed a notice of intent to seek the death penalty against Mr. Gooch for Counts 126 and 128, *i.e.*, the murders of Yolanda Miller and Calvin Cooper. Notice of Intent to Seek Death Penalty [Dkt. 378]. The M Street Crew defendants were divided into three groups for trial. The Group One defendants, including Jonathan Franklin, the leader of the M Street Crew, George Wilson, William Robinson, William Simmons, and Joseph Blackson, went to trial and a jury found them guilty on May 25, 2006. *See* March 6, 2006 Minute Entry; Verdict Form as to Franklin, *et al.* [Dkt. 552]. The Group Two defendants, including Anthony Davis, Kenneth Cole, Elliot Fields, James Hill, Shawn Hinson, Jamal Hinson, and Regina Lenear, entered guilty pleas on December 21, 2005 and December 14, 2006. *See* Dec. 21, 2005 Minute Entry (guilty pleas entered as to Ms. Lenear and Messrs. Cole, Davis, Hill, Fields, and Jamal Hinson); Dec. 14, 2006 Minute Entry (guilty plea entered as to Shawn Hinson). Group Three defendants Mr. Gooch, Kenneth Dodd, Jonte Robinson, and Tommie Dorsey went to trial on January 9, 2007, but Messrs. Dodd, Robinson, and Dorsey entered guilty pleas after jury selection. *See* Jan. 9, 2007 Minute Entry; Jan. 17, 2007 Minute Entry (guilty pleas entered as to Messrs. Dodd, Robinson, and Dorsey). As a result, Mr. Gooch was the sole defendant at trial, and a jury found him guilty on June 1, 2007. *See* Verdict Form as to Mr. Gooch [Dkt. 812].

Mr. Gooch's appointed trial counsel was Thomas Heslep. After the United States announced that it might, and then that it would, seek the death penalty, Jensen Barber and James Connell, III, were appointed as "learned counsel." *See* 18 U.S.C. § 3005 ("Whoever is indicted for . . . [a] capital crime shall" have appointed two counsel, "of whom at least 1 shall be learned in the law applicable to capital cases."). Mr. Heslep filed multiple pre-trial motions on behalf of

Mr. Gooch, which were ultimately denied. *See, e.g.*, Mot. to Suppress Statements [Dkt. 557]; June 14, 2006 Mot. to Sever Counts [Dkt. 565]; Mot. to Dismiss Counts One and Two [Dkt. 576]; Mot. to Strike Lurk Murder Evidence [Dkt. 577]; July 6, 2006 Mot. to Sever Counts [Dkt. 579]; Mot. to Strike Death Penalty [Dkt. 580]; Mot. to Suppress Identification Testimony [Dkt. 667]; Oct. 25, 2006 Minute Entry; Nov. 7, 2006 Mem. Op. & Order [Dkt. 692]; Mot. to Strike Graffiti Evidence [Dkt. 706]; Mot. to Allow Polygraph Cross-Examination [Dkt. 707]; Dec. 20, 2006 Mem. Op. & Order [Dkt. 712]. Counsel also made an oral motion to strike the Government's opening statement on February 7, 2007; oral motions for a mistrial on February 27, 2007 and April 25, 2007; and an oral motion for judgment of acquittal on May 2, 2007. For the reasons stated on the record, these motions also were denied.

On June 1, 2007, the jury convicted Mr. Gooch of narcotics conspiracy, RICO conspiracy, drug dealing, four felony murders, assault with intent to kill while armed, assault on a police officer, three violent crimes in aid of racketeering (VICAR), 18 U.S.C. § 1959, and various gun charges. *United States v. Gooch*, 514 F. Supp. 2d 63, 64 (D.D.C. 2007); *see also* Verdict Form as to Mr. Gooch.

The trial evidence showed that the M Street Crew "coordinated their drug-dealing efforts, cooperated with one another to avoid arrest and imprisonment, and maintained a reputation for violence." *United States v. Gooch*, 665 F.3d 1318, 1322 (D.C. Cir. 2012). Mr. Gooch served as the primary "muscle" for the M Street Crew, enforcing the gang's rules, participating in violent activities, and punishing disloyalty amongst its members. *Id.*

Mr. Gooch was convicted of the August 1, 2000 robbery and murders of William Cunningham and Christopher Lane. *Id.* at 1322–23; Verdict Form as to Mr. Gooch at 6–8. Mr. Gooch was also convicted of the February 21, 2003 murders of Calvin Cooper and Yolanda

Miller. *Id.* at 1322–23. On the latter two murders, the jury declined to proceed to the death penalty. *See* Death Penalty Phase Eligibility Verdict Form [Dkt. 821].

On September 14, 2007, this Court sentenced Mr. Gooch to life imprisonment on Count 1 (narcotics conspiracy); a mandatory term of life imprisonment on Count 2 (RICO conspiracy); forty years on Count 25 (distribution of crack cocaine near a school); twenty years on Count 26 (distribution of ecstasy near a school); forty years on Count 29 (distribution of crack cocaine near a school); a mandatory term of fifteen years to life on Count 110 (first degree burglary while armed, 22 D.C. Code §§ 801(a), 4502); a mandatory term of thirty years to life on Count 112 (first degree felony murder while armed, 22 D.C. Code §§ 2101, 4502); a mandatory term of thirty years to life on Count 113 (first degree felony murder while armed, 22 D.C. Code §§ 2101, 4502); twenty years to life on Count 116 (second degree murder while armed, 22 D.C. Code §§ 2102, 4502); twenty years to life on Count 117 (second degree murder while armed, 22 D.C. Code §§ 2102, 4502); thirty years to life on Count 122 (assault with intent to kill while armed, 22 D.C. Code §§ 2101, 4502); eight years on Count 123 (assaulting a police officer with a dangerous weapon, 22 D.C. Code § 405(b)); twenty years on Count 124 (violent crime in aid of racketeering); sixty years on Count 125 (first degree premeditated murder while armed, 22 D.C. Code §§ 2101, 4502); a mandatory term of life imprisonment on Counts 126 and 128 (violent crime in aid of racketeering activity); sixty years on Count 127 (first degree premeditated murder while armed, 22 D.C. Code §§ 2101, 4502); a mandatory term of five years on Count 145 (use of a firearm during and in relation to a crime of violence or drug trafficking crime, 18 U.S.C. § 924(c)); mandatory terms of twenty-five years on Counts 146 and 147 (use of a firearm during and in relation to a crime of violence or drug trafficking crime, 18 U.S.C. § 924(c)); five to fifteen years on Counts 150, 152, and 153 (possession of a firearm during a crime of violence, 22

4

D.C. Code § 4504(b)); and thirteen years on Counts 155, 156, and 157 (possession of a firearm during a crime of violence, 22 D.C. Code § 4504(b)). *See* Judgment [Dkt. 891] at 1–5. Mr. Gooch filed a timely appeal.[1] After full arguments concerning jury selection, trial, and verdict, the D.C. Circuit affirmed Mr. Gooch's convictions and sentence on January 6, 2012. *See Gooch*, 665 F.3d at 1338.

Mr. Gooch timely filed the instant motion on April 9, 2013, less than one year after the U.S. Supreme Court denied his petition for writ of certiorari.[2] *United States v. Gooch*, 665 F.3d 1318 (D.C. Cir. 2012), *cert denied*, 132 S. Ct. 1981 (2012); *see also* 28 U.S.C. § 2255(f)(1) (providing a one-year limitations period from, *inter alia*, "the date on which the judgment of conviction becomes final").

## II. LEGAL STANDARD

A federal prisoner claiming the right to be released on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack," may move the court which imposed the sentence to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Because "Section 2255 is not a substitute for a direct appeal," "in order to gain relief under *any* claim, [the movant] is obliged to show a good deal more than would be sufficient on a direct

---

[1] Mr. Gooch was represented by Stephen Leckar on appeal. *See United States v. Gooch*, 665 F.3d 1318 (D.C. Cir. 2012).

[2] The Court received and docketed Mr. Gooch's Motion on April 24, 2013. However, under the prison mailbox rule, the operative filing date is that on which petitioner placed his motion in the prison mail system to be sent to the Court. *Houston v. Lack*, 487 U.S. 266, 270–71 (1988). Since Mr. Gooch mailed his Motion on April 9, 2013, the Court deems it filed as of that date.

5

appeal from his sentence." *United States v. Pollard*, 959 F.2d 1011, 1020 (D.C. Cir. 1992) (citing *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A hearing need not be held on a § 2255 motion when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *accord United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996). When the judge ruling on the § 2255 motion is the same judge who presided over the trial, as is the case here, the decision as to whether an evidentiary hearing is necessary is within the discretion of the Court. *See Morrison*, 98 F.3d at 625. "When a § 2255 motion involves ineffective assistance of counsel, a hearing is not required if the district court determines that the 'alleged deficiencies of counsel did not prejudice the defendant.'" *United States v. Weaver*, 234 F.3d 42, 46 (D.C. Cir. 2000) (quoting *United States v. Sayan*, 968 F.2d 55, 66 (D.C. Cir. 1992)) (other citation omitted).

### III. ANALYSIS

Mr. Gooch challenges his convictions on the following grounds: (1) ineffective assistance of trial counsel for failing to attack the Grand Jury's indictment procedure; (2) ineffective assistance of trial counsel for eliciting damaging testimony on cross-examination regarding the February 21, 2003 murders of Calvin Cooper and Yolanda Miller; (3) ineffective assistance of appellate counsel for failing to challenge trial counsel's performance on the aforesaid cross-examination; and (4) ineffective assistance of trial counsel for failing to request a change of venue. *See* Section 2255 Motion (Def. Mot.) [Dkt. 1212] at 16–34; Def. Reply [Dkt. 1228] at 3–15.

The Court finds that no evidentiary hearing is warranted on Mr. Gooch's § 2255 petition. Having presided over jury selection and Mr. Gooch's trial, this Court is familiar with the facts and issues of the case. The parties' briefs and the record conclusively demonstrate that

Mr. Gooch is not entitled to relief. The Court therefore proceeds to the merits of Mr. Gooch's claims.

### A. Ineffective Assistance of Trial Counsel

Mr. Gooch faced the death penalty if the Attorney General approved the prosecution as a capital case. Thomas Heslep was appointed as trial counsel for Mr. Gooch. When the Government stated that it was considering the death penalty, the Court appointed Jensen Barber as learned counsel. *See* 18 U.S.C. § 3005. Because of complexities in the case, the Court later appointed James Connell as a second learned counsel on October 17, 2006. Two days later, the Government filed its Notice of Intent to Seek the Death Penalty. *See* Notice of Intent to Seek the Death Penalty. During the course of trial, at Mr. Gooch's request, Mr. Connell joined Mr. Heslep as part of the trial team.[3] Thus, Mr. Gooch's claims for ineffective assistance of trial counsel may relate to two lawyers, although his specific allegations appear to be directed at Mr. Heslep.

The Supreme Court has articulated two separate standards for evaluating the effectiveness of trial counsel in a criminal case. Under *United States v. Cronic*, 466 U.S. 648 (1984), courts presume a *per se* violation of the Sixth Amendment right to counsel only "'if counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing.'" *Bell v. Cone*, 535 U.S. 685, 697 (2002) (quoting *Cronic*, 466 U.S. at 659). Mr. Gooch claims that Mr. Heslep wholly failed to challenge the Grand Jury's indictment procedure and to request a change of venue. Def. Mot. at 4, 7. While these allegations concern an alleged failure to raise certain pre-trial issues, they do not allege a complete failure to subject the prosecution's case to

---

[3] Mr. Barber, now deceased, did not actively participate at the guilt phase of the trial.

meaningful testing. *See Cronic*, 466 U.S. at 659. The Court concludes that the *Cronic* analysis is inapplicable here.

The more common standard for ineffective assistance of counsel was established by *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires (1) a showing that counsel's representation fell below an objective standard of reasonableness; *and* (2) a showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *United States v. Hughes*, 514 F.3d 15, 17 (D.C. Cir. 2008) (quoting *Strickland*, 466 U.S. at 687–88) (quotation marks omitted). A convicted defendant bears the burden of showing that his lawyer made errors "'so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment and that counsel's deficient performance was prejudicial.'" *United States v. Geraldo*, 271 F.3d 1112, 1116 (D.C. Cir. 2001) (quoting *Strickland*, 466 U.S. at 687). Therefore, to prevail on a claim of ineffective assistance of counsel, a defendant must prove both incompetence *and* prejudice. *Strickland*, 466 U.S. at 700.

The Sixth Amendment guarantees legal representation to a criminal defendant at trial. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."). Since it is so easy after the fact to blame the lawyer for the client's conviction, a high standard applies to demonstrate that the lawyer failed to represent his client effectively. A court's evaluation of an attorney's performance should be highly deferential, *i.e.*, there is a strong presumption that an attorney's conduct fell within the wide range of reasonable professional assistance. *United States v. Toms*, 396 F.3d 427, 432 (D.C. Cir. 2005). The fact that a particular litigation strategy failed does not mean that it had no chance of success or that counsel was ineffective by employing it. "It is all too tempting for a

defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689.

Mr. Gooch alleges ineffective assistance of trial counsel because (1) "[c]ounsel [u]nprofessionally failed to . . . object to the admission of the indictment by the prosecution[4] in violation of the Fifth Amendment [] and the Sixth Amendment," Def. Mot. at 16; (2) "Defendant was prejudiced by the objectively unreasonable performance" of Mr. Heslep on cross-examination of MPD Detective Herndon, Def. Mot. at 25; and (3) counsel failed "to [move for] a change of venue, thus depriving [Mr. Gooch] of a fair trial [as] guaranteed by [the U.S. Constitution]," Def. Mot. at 34. The Court evaluates each of these claims under the *Strickland* standard.

### i. Grand Jury Indictment Procedure

Mr. Gooch contests the validity of the Grand Jury's indictment procedure in his case. Specifically, he contends that "there is nothing in the . . . record [that] show[s] where the grand jury returned the defendant's indictment in open court, or voted the indictment in open court." Def. Reply at 3 (internal quotation marks omitted). Mr. Gooch contends that the Grand Jury did not comply with the Federal Rules of Criminal Procedure, and that this Court lacked jurisdiction over his trial and sentencing. *Id.* at 5–7; *see also* Fed. R. Crim. P. 6(f) ("A grand jury may indict only if at least 12 jurors concur. *The grand jury—or its foreperson* or deputy foreperson—*must return the indictment* to a magistrate judge *in open court*." (emphasis added)).

---

[4] Despite the wording of Mr. Gooch's claim, the Superseding Indictment was neither admitted into evidence at trial nor submitted to the jury. As indicated below, his actual contention is related to the Grand Jury's presentment of the Superseding Indictment.

The Supreme Court has held that "[a] convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Mr. Gooch has made no such showing concerning the Superseding Indictment. The Superseding Indictment indicates, on its face, that it was filed by the foreperson in open court on October 19, 2005. *See* Superseding Indictment at 1, 74. Through the attestation of its anonymous foreperson and the Assistant United States Attorney, it bears evidence that twelve jurors concurred with the charges, as presented in court. The fact of the foreperson's signature is evident on the docket, but his or her name is omitted as a protective measure. *See id.* at 74. More to the point, "as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988); *see also United States v. Lennick*, 18 F.3d 814, 817 (9th Cir. 1994) (holding that "errors in the grand jury indictment procedure are subject to harmless error analysis unless the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair" (citation and internal quotation marks omitted)). Mr. Gooch neither supplies nor suggests evidence that the Grand Jury was compromised or that its proceedings were fundamentally unfair. His counsel—whether Mr. Heslep or Mr. Connell—were not objectively unreasonable for omitting an argument for which there was no evidence.

Further, Mr. Gooch has not established any resulting prejudice from the Grand Jury's procedures for returning the Superseding Indictment. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Mr. Gooch argues that the "jury verdict is automatically invalid when the Court [lacks] jurisdiction,

10

because [s]ubject [m]atter [j]urisdiction is a threshold issue and may be raised at any time and cannot be forfeited" Def. Reply at 6–7. But even if Mr. Gooch were prosecuted under a defective indictment, which has not been established, there is no evidence that the alleged defects were severe enough to have warranted dismissal of all charges against him *with prejudice*. *Cf. Ballard v. United States*, 329 U.S. 187, 201 (1946) ("A decision by this court merely directing the dismissal of the indictment because of error in the selection of the grand jury . . . will inevitably lead to curing of this defect by resubmission to a properly selected grand jury."). Because the Superseding Indictment contradicts his claims and because Mr. Gooch offers no evidence of prejudice resulting from the Grand Jury's alleged non-compliance with ministerial aspects of the indictment procedure, the Court will deny his claim of ineffective assistance based on the Grand Jury's procedure.[5]

### ii. Thomas Heslep's February 21, 2007 Cross-Examination

Mr. Gooch points to Mr. Heslep's February 21, 2007 cross-examination of MPD Detective Carlton Herndon to prove ineffective assistance of counsel. Def. Mot. at 25–33. When cross-examining the detective on February 21, 2007, Mr. Heslep asked an open-ended question that prompted Detective Herndon to testify that Mr. Gooch absented himself from 18th and M Streets, N.E., the M Street Gang's territory, because Mr. Gooch was responsible for shooting Calvin Cooper and Yolanda Miller in an alley.

> Q. He use[d] to be out there all the time until he became wanted but he was down there every day all the time 18th and M, right in those four blocks, right?

---

[5] Mr. Gooch adds that the Court is "guilty of corruption because of its improper exercise of [j]urisdiction," Reply at 7, and that "[t]he prosecutor knowingly presented false evidence to the Court . . . [and] should have known the indictment was false[,] which amounts to a denial of due process," *id.* at 8–9. Because these arguments are premised on the allegedly defective indictment process, they, too, must fail.

11

> A. Yes.
>
> Q. Now that's a bit different from disappearing from some shooting in the alley[,] isn't it?
>
> A. No.
>
> Q. Why not?
>
> A. Because he shot the people, they put a warrant out for him and he disappeared.

Feb. 21, 2007 A.M. Tr. [Dkt. 865] at 59.

On February 27, 2007, Mr. Connell made an oral motion for a mistrial, arguing that Mr. Heslep's cross-examination constituted ineffective assistance of counsel under the Sixth Amendment.[6] Feb. 27, 2007 Minute Entry; *see also* Def. Mot. for Mistrial at 1. The Court denied the motion in open Court on February 28, 2007. *See* Feb. 28, 2007 Minute Entry. Specifically, the Court stated:

> Maybe the questioning wasn't handled as well as you would have wanted it to be. Maybe instead of saying why not, Mr. Heslep could have said[,] that was a different warrant[,] wasn't it? That wasn't a warrant for a home invasion, wasn't it? . . . But I don't see this as ineffective assistance of counsel.
>
> Ineffective assistance of counsel has to be if counsel's conduct so undermines the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.
>
> Now[,] to begin with, of course, it's a little early. We don't have any result. So we'll put prematurity as one of the problems with the claim of ineffective assistance of counsel.
>
> . . .

---

[6] In supplemental briefing during trial, the parties addressed whether defense counsel could argue its own ineffective assistance, and whether such a claim could be raised at trial rather than on appeal. *See* Def. Mot. for Mistrial [Dkt. 756]; U.S. Opp'n to Mot. for Mistrial [Dkt. 757]. Given its conclusions, the Court did not resolve this dispute.

12

> It seems to me there is no ineffective assistance of counsel. That whatever the issue is can be cured with a curative instruction and that a mistrial . . . would be [a] terribly clumsy ax to address what can be addressed with much smaller tools.

Feb. 28, 2007 A.M. Tr. [Dkt. 867] at 37–38.

In his brief, Mr. Gooch repeats Mr. Connell's February 27, 2007 argument that "the testimony that [Mr. Gooch] [was] responsible [for the shootings of Calvin Cooper and Yolanda Miller] [was] the only direct evidence . . . presented in the trial. And as the Court has observed, that evidence was elicited not by the government, but by the defense." Feb. 27, 2007 P.M. Tr. [Dkt. 866] at 7; *see also* Def. Mot. at 28. While Mr. Heslep might have regretted the question, a simple error does not constitute ineffective assistance of counsel. *See, e.g., Roe v. Flores-Ortega*, 528 U.S. 470, 482 (2000) ("[I]n cases involving mere 'attorney error,' we require the defendant to demonstrate that the errors 'actually had an adverse effect on the defense.'" (quoting *Strickland*, 466 U.S. at 693)); *Smith v. Robbins*, 528 U.S. 259, 287–88 (2000) (applying prejudice requirement where counsel was alleged to have missed a specific non-frivolous argument). The defense requested that the Court appoint a new attorney as chief trial counsel. *See* Feb. 28, 2007 A.M. Tr. at 38. On February 28, 2007, the Court denied Mr. Gooch's motion for a mistrial and addressed any potential issues with a curative instruction and the addition of Mr. Connell to the trial defense team. *See id.* at 38–41. Both lawyers vigorously defended Mr. Gooch throughout the trial, and, after the jury verdict, Mr. Connell persuaded the jury that it did not need to consider any issues relating to the death penalty. On this record, the Court finds that Mr. Gooch did not suffer actual prejudice resulting from Mr. Heslep's February 21, 2007 cross-examination of Detective Herndon.

Mr. Gooch also claims that Mr. Heslep had "'an actual conflict of interest [that] adversely affected his . . . performance.'" Def. Mot. at 29 (quoting *Cuyler v. Sullivan*, 446 U.S.

13

335, 348 (1980)). However, Mr. Gooch offers no evidence to support his claim of a conflict of interest. There is no basis for the Court to find that Mr. Heslep had a conflict of interest that prejudiced Mr. Gooch at trial. *Cf. United States v. Miskinis*, 966 F.2d 1263, 1268 (9th Cir. 1992) (holding that "the record [was] not sufficiently developed to allow [the Court] to determine on direct appeal whether an actual conflict of interested existed").

### iii. *Change of Venue*

Mr. Gooch contends that "[w]hen the venue of a criminal trial is saturated with news coverage, [the Fifth and Sixth Amendments to the U.S. Constitution] require a change of venue even before attempting to seat a jury." Def. Mot. at 34; *accord* Def. Reply at 14. According to Mr. Gooch, a change of venue also was required because "a local judge would have [had] a difficult if not impossible time [] finding that local [police] officers had acted dishonest[l]y." Def. Mot. at 34. He also claims prejudice because "many other people had already been tried in the Superior Court of the District of Columbia connected to this . . . case." Def. Reply at 14. To allege ineffective assistance on this basis, Mr. Gooch must attribute his trial in the District of Columbia to "acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Unfavorable news coverage alone may not be sufficient to warrant a change of venue from the District of Columbia. *See United States v. Caldwell*, 543 F.2d 1333, 1342 (D.C. Cir. 1974) (finding no error where the district court denied defendant's motion for change of venue after defense counsel "directed the trial judge's attention to news articles and broadcasts," because there was "no indication . . . that an impartial jury could not be obtained"). Mr. Gooch fails to identify striking or prejudicial pre-trial publicity sufficient to challenge the impartiality of

the jury, or contend that counsels' failure to move for a change of venue before the jury was seated constituted ineffective assistance rather than the exercise of professional judgment.

The selection of the jury for Mr. Gooch's trial proceeded in four critical stages: first, the Court issued a question to 3,500 potential jurors to identify and excuse immediately those who stated legitimate reasons they could not serve on a six-month trial; second, the Court administered a juror questionnaire over the course of two days, which was completed by hundreds of prospective jurors and to which all counsel had directed comments, objections, and suggestions; third, prosecutors and defense counsel reviewed all juror questionnaires and objected to specific jurors, which led the Court to excuse many potential jurors; and, finally, the Court conducted individual questioning of approximately 300 jurors in open court to discern biases for and against the Defendant, the Government and—especially—the death penalty, to which all defense counsel and prosecutors contributed and asked additional questions. *See* Jan. 3, 2007 Order [Dkt. 732]; Jan. 9, 2007 Minute Entry. This process started on January 9, 2007 and concluded on February 5, 2007, and Mr. Gooch and his lawyers were active participants throughout. *See Gooch*, 665 F.3d at 1322. Inasmuch as Mr. Gooch and his counsel participated throughout the jury selection process and the Court accepted counsels' juror objections, *see id.*, it is not surprising that his lawyers did not move for a change of venue.

Finally, even if counsel were defective in some way, Mr. Gooch has not shown any resulting prejudice. *See Strickland*, 466 U.S. at 694. Mr. Gooch implicitly alleges that the Court was biased in favor of local MPD officers, and that both the Court and the jury were biased against him because of earlier related trials in D.C. Superior Court. Def. Mot. at 34; Def. Reply at 14. But he fails to explain or support his allegation of judicial bias or identify the earlier trials in D.C. Superior Court. Contrary to Mr. Gooch's assertions, the record is devoid of any

15

indication that jury bias tainted the verdict. Instead, after weeks of deliberations, the jury rejected the defenses and unanimously voted to convict, therefore necessarily crediting some cooperators' testimony.

### B. Ineffective Assistance of Appellate Counsel

Mr. Gooch avers that he failed to raise a claim of ineffective assistance on direct appeal because appellate counsel was "ineffective." *See* Def. Mot. at 4, 6–7, 10. Mr. Gooch argues that his appellate counsel, Stephen Leckar, "should have raised [Mr. Heslep's cross examination of Detective Herndon] on direct appeal []. Indeed, appellate counsel [was] completely ineffective by failing to raise the above issue on direct appeal." Def. Reply at 10. The standard for ineffective assistance of counsel on appeal is as follows:

> [Petitioner] must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [Petitioner] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's [error], he would have prevailed on his appeal.

*Robbins*, 528 U.S. at 285 (internal citations omitted).

Mr. Gooch has not established that Mr. Leckar's failure to argue ineffective assistance of trial counsel was beyond his "reasonable professional judgment." *Strickland*, 466 U.S. at 690. On appeal, Mr. Leckar raised five arguments on behalf of Mr. Gooch: (1) the trial court erred by allowing the Government to use peremptory challenges to remove qualified African Africans from the venire, in violation of *Batson v. Kentucky*[7]; (2) the trial court erred in

---

[7] *Batson v. Kentucky*, 476 U.S. 79 (1986), forbids prosecutors and defense counsel, under the Equal Protection Clause, from striking potential jurors solely on account of race. There are three elements to a *Batson* challenge:

rejecting his challenge to the joinder of local and federal charges stemming from the murders of Messrs. Cunningham and Lane; (3) the trial court erred in denying his motion for severance of overt acts relating to the murders of Messrs. Cunningham and Lane to support Count One (narcotics conspiracy) and Count Two (RICO conspiracy); (4) the trial court erred in denying his motion to vacate judgment as to the murders of Messrs. Cunningham and Lane; and (5) the trial court erred in denying his motion for judgment of acquittal on Counts 126 and 128, *i.e.*, the murders of Calvin Cooper and Yolanda Miller. *Gooch*, 665 F.3d at 1321.

Despite these points on appeal, Mr. Gooch argues that Mr. Leckar also should have raised ineffective assistance of trial counsel based on Mr. Heslep's cross-examination of MPD Detective Herndon. But appellate counsel is not required to raise every conceivable issue on appeal. Appellate counsel is expected to exercise his or her professional judgment to focus the litigation and raise those claims that are most likely to succeed. *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").

Mr. Gooch cites *Caver v. Straub*, 349 F.3d 340 (6th Cir. 2003), for the proposition that appellate counsel is ineffective when he or she fails to present a claim that is "much stronger" than the issues actually presented on appeal. Def. Mot. at 33. *Caver* held that "there

---

> First, a defendant must make a *prima facie* showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, . . . the trial court must determine whether the defendant has shown purposeful discrimination.

*Snyder v. Louisiana*, 552 U.S. 472, 476–77 (2008) (internal quotation marks and alterations omitted). The trial court denied Mr. Gooch's *Batson* challenges, and the D.C. Circuit affirmed on appeal. *See Gooch*, 665 F.3d at 1322, 1326–28.

can be little doubt but that the omitted issue—trial counsel's alleged absence during jury re-instruction—was much stronger than the issues . . . appellate counsel presented." 349 F.3d at 348. Mr. Gooch's allegation does not rise to this level.

To be sure, Mr. Heslep elicited potentially damaging testimony on cross-examination by asking Detective Herndon an open-ended question about Mr. Gooch's whereabouts after the murders of Mr. Cooper and Ms. Miller. Despite Detective Herndon's testimony, Mr. Heslep's question did not evince professional negligence or a wholesale disregard of Mr. Gooch's interests at a critical stage of trial. Instead, the record shows that defense counsel opposed the Court's suggestion that it issue a curative instruction, and the Court acceded to Mr. Gooch's personal request that Mr. Connell join Mr. Heslep on the trial team. *See* Feb. 28, 2007 A.M. Tr. at 38–41. The Court cannot find that *Caver v. Straub* required presentation of the allegedly deficient cross-examination on appeal or, more critically, that Mr. Leckar was constitutionally deficient for failing to raise it on direct appeal. As to the latter point, the Court notes this Circuit's preference for allegations of ineffective assistance of counsel to be addressed in the first instance by the trial judge, subject to later appeal. *See United States v. Franklin*, 663 F.3d 1289, 1290 (D.C. Cir. 2011) ("Consistent with our common practice, we remanded [Mr. Franklin's] claim of ineffective assistance of counsel for analysis in the first instance by the District Court."). Thus, had Mr. Leckar raised the issue of Mr. Heslep's cross examination of Detective Herndon, it would have been remanded to this Court for analysis and decision in the first instance. Mr. Gooch was not prejudiced by Mr. Leckar's decision not to raise the issue of Mr. Heslep's cross examination on direct appeal.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Mr. Gooch's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Dkt. 1212]. A memorializing Order accompanies this Opinion.


Date: March 7, 2014
/s/
ROSEMARY M. COLLYER
United States District Judge